## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| FRANKIE FULTON, DANIEL LUEVANO, AND ALL OTHERS SIMILARLY SITUATED UNDER 29 USC 216(B), | |
| *Plaintiffs*, | |
| v. | **Civil Action No. 3:16-cv-474** |
| BAYOU WELL SERVICES, LLC, | |
| *Defendant*. | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS CERTAIN PLAINTIFFS AND CLAIMS, AND ITS RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE

Douglas E. Hamel, Attorney-in-Charge
State Bar No. 08818300
Vanetta L. Christ
State Bar No. 24050417
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, TX  77002-6760
Telephone: 713.758.2036
Facsimile:  713.615.5388
dhamel@velaw.com
lchrist@velaw.com

John C. Wander
State Bar No. 00791877
Margaret Terwey
State Bar No. 24087454
VINSON & ELKINS L.L.P.
Trammel Crow Center
2001 Ross Ave., Suite 3700
Dallas, TX 75201
Telephone:  214.220.7918
Facsimile:  214.999.7918
jwander@velaw.com
mterwey@velaw.com

July 26, 2016

**Attorneys for Defendant,**
**BAYOU WELL SERVICES, LLC**

## TABLE OF CONTENTS

**Page**

I.    SUMMARY ...................................................................................................1

II.   BRIEF IN SUPPORT OF MOTION TO DISMISS ............................................2

    A.    RELEVANT BACKGROUND ..............................................................2

        1.    The Pending Bittner Litigation. ....................................................2

        2.    Plaintiffs and Their Claims Here. .................................................3

    B.    ARGUMENT ......................................................................................4

        1.    Plaintiffs' Collective Claim Alleged on Behalf of Equipment Operators Should Be Dismissed In Deference to Bittner Pursuant to the First-Filed Rule. ........................................4

        2.    Plaintiff Fulton's Claims Should be Dismissed Because He Opted In to the Bittner Case and is Pursuing His FLSA Claim for Overtime There. ..........................................................7

        3.    Equipment Operator Baugh's Collective Claim Should Be Dismissed. .................................................................................8

        4.    Plaintiff Luevano's Collective Claim Should Be Dismissed Because He is Not a Member of the Collective on Whose Behalf He Seeks To Pursue an FLSA Claim. ...............................9

III.  BRIEF IN SUPPORT OF CERTIFICATION RESPONSE .............................10

    A.    RELEVANT FACTS ........................................................................10

        1.    All Named Plaintiffs And Declarants Worked Only In BWS's Pressure Pumping Business Line, Which Did Not Overlap With Its Other Business Line. ....................................10

        2.    Named Plaintiffs And Declarants Did Not Receive A Non-Discretionary "Safety Bonus" But Were Eligible To Participant In A Discretionary Team Incentive Plan. ...............11

        3.    Only Field Employees In The Pressure Pumping Business Line, Including Named Plaintiffs and Declarants, Worked A Schedule That Made Them Eligible For Non-Revenue Pay. ..........................................................................................11

i

4.     Plaintiffs' Allegations Regarding "Travel Pay" Are Unique To Them.................................................................................13

B.    OPPOSITION TO CONDITIONAL CERTIFICATION AND NOTICE..........................................................................................13

1.     Conditional Certification Should Be Denied Because The Certification Motion Is Moot.....................................................13

2.     Legal Standard for Conditional Certification. ..........................14

3.     Certification Should Be Denied Because the Proposed Collective Seeks To Include Individuals About Whom Named Plaintiffs Offer No Evidence. ......................................15

a.     Plaintiffs Only Offer Evidence Regarding Pressure Pumping Employees. ..................................................15

b.     Plaintiffs Only Offer Evidence Regarding Field Employees.........................................................................16

4.     Conditional Certification Should Be Denied Because The Proposed Collective Includes Equipment Operators, Whose Collective Claims Are Pending In Bittner. .................................17

5.     Conditional Certification Should Be Denied Because The Individual Named Plaintiffs Are Not Similarly Situated To The Proposed Collective. ..........................................................19

C.    BWS OBJECTS TO THE PROPOSED NOTICE AND METHODS OF NOTIFICATION ........................................................20

1.     Notice By Email Is Unnecessary as is the Requested Production of Potential Plaintiffs' Email Addresses and Telephone Numbers. ...............................................................20

2.     Workplace Posting Is Inappropriate...........................................21

3.     The Consent Form Should Be Limited to Joining This Case.............................................................................................22

4.     The Proposed Notice Is One-Sided and Misleading. .................22

IV.    CONCLUSION...............................................................................................24

## INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Aguayo v. Bassam Odeh, Inc.*,
   No. 13-CV-2951, 2014 WL 737314 (N.D. Tex. Feb. 26, 2014) ............................................. 21

*Alvarez v. Gold Belt, LLC*,
   C.A. No. 08-4871, 2011 WL 1337457 (D.N.J. Apr. 7, 2011) ................................... 8, 9, 17, 18

*Behnken v. Luminant Min. Co., LLC*,
   997 F. Supp. 2d 511 (N.D. Tex. 2014) ..................................................................................... 23

*Benavides v. Home Depot USA, Inc.*,
   2006 WL 1406722 (S.D. Tex. May 19, 2006) ........................................................................... 5

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599 (5th Cir. 1999) .................................................................................................... 4

*Castillo v. Taco Bell of Am., LLC*,
   960 F. Supp. 2d 401 (W.D.N.Y. 2013) .................................................................................... 18

*Copello v. Boehringer Ingelheim Pharm., Inc.*,
   812 F. Supp. 2d 886 (N.D. Ill. 2011) ........................................................................................ 7

*Flowers v. MGTI, LLC*,
   C.A. No. H-11-1235, 2012 WL 1941755 (S.D. Tex. May 29, 2012) ....................................... 16

*Graham v. Jet Specialty, Inc.*,
   MO-15-CV-135-DAE, 2016 WL 154846 (W.D. Tex. Jan. 11, 2016) ...................................... 23

*Greene v. H & R Block E. Enters., Inc.*,
   727 F. Supp. 2d 1363 (S.D. Fla. 2010) ................................................................................. 5, 7

*Huamen v. Ojos Locos Sports Cantina LLC*,
   3:13-CV-4938-B, 2014 WL 4081554 (N.D. Tex. Aug. 19, 2014) .......................................... 14

*LaFleur v. Dollar Tree Stores, Inc.*,
   2012 WL 4739534 (E.D. Va. Oct. 2, 2012) .............................................................................. 6

*Lawton v. Arc Pressure Data, Inc.*,
   No. 3:15-cv-01279-N (Godbey, J.) .......................................................................................... 15

*Lentz v. Spanky's Rest. II, Inc.*,
   491 F. Supp. 2d 663 (N.D. Tex. 2007) ................................................................................... 14

*Mateos v. Select Energy Servs., LLC*,
   977 F. Supp. 2d 640 (W.D. Tex. 2013) .................................................................. 14

*McLeod v. Just Energy Mktg. Corp.*,
   C.A. No. 1:15-CV-00368, 2015 U.S. Dist. LEXIS 82685 (N.D. Ohio June 25, 2015)...... 5, 8, 9

*Medina v. Brothers Behrman Hwy, Inc.*,
   C.A. No. 2:13-cv-04831, 2015 WL 3679534 (E.D. La. June 12, 2015)............................. 8, 17

*Morales v. Thang Hung Corp.*,
   No. 4:08-2795, 2009 WL 2524601 (S.D. Tex. Aug. 14, 2009) ................................. 14

*Morgan v. Rig Power, Inc.*,
   No. 7:15-CV-73-DAE, 2015 U.S. Dist. LEXIS 166644 (W.D. Tex. Dec. 10, 2015)............... 14

*Nguyen v. Versacom, LLC*,
   3:13-CV-4689-D, 2015 WL 1400564 (N.D. Tex. Mar. 27, 2015) ........................... 20

*Norris v. Hearst Trust*,
   500 F.3d 454 (5th Cir. 2007) .................................................................................. 2

*Ortiz v. Panera Bread Co.*,
   2011 WL 3353432 (E.D. Va. Aug. 2, 2011).................................................................. 4

*Roberts v. S.B. S. Welding, LLC*,
   3:14-CV-3617-B, 2015 WL 8773610 (N.D. Tex. Dec. 15, 2015)........................... 21

*Save Power Ltd. v. Syntek Finance Corp.*,
   121 F.3d 947 (5th Cir. 1997) .................................................................................. 4

*Thomas v. Apple-Metro, Inc.*,
   2015 WL 505384 (S.D.N.Y. Feb. 5, 2015)............................................................. 6, 7

*Thomas v. Beaumont Indep. Sch. Dist.*,
   2016 WL 922182 (E.D. Tex. Feb. 12, 2016) .......................................................... 8

*Tolentino v. C&J Spec-Rent Servs., Inc.*,
   716 F. Supp. 2d 642 (S.D. Tex. 2010) .............................................................. 16, 23

*Yerger v. Liberty Mut. Ins. Group*,
   No. 5:11-DV-238-D, 2011 WL 5593151................................................................ 16

## Other Authorities

29 U.S.C. § 216(b) ................................................................................... 14, 20, 22

Texas Disciplinary Rules of Professional Conduct, Rule 7.03(a) and comment 1 ...................... 21

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS CERTAIN
PLAINTIFFS AND CLAIMS, AND ITS RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE**

Defendant Bayou Well Services, LLC ("Defendant" or "BWS"), files this Brief in
Support of Its Motion to Dismiss Certain Plaintiffs and Claims ("Motion to Dismiss"), and this
Response ("Certification Response") in Opposition to the Motion for Notice to Potential
Plaintiffs and Conditional Certification (the "Certification Motion") filed by Plaintiffs Frankie
Fulton ("Fulton"), Daniel Luevano ("Luevano"), and Kaleb Baugh ("Baugh") (collectively,
"Plaintiffs"), as follows.[1]

## I.    SUMMARY

Plaintiffs' collective claims alleged on behalf of BWS equipment operators should be
dismissed in deference to *Jason Bittner, et al., v. Bayou Well Services, LLC*, No. 4:15-cv-1142
(S.D. Tex.) (hereinafter "*Bittner*"), pursuant to the first-filed rule. Moreover, Fulton should be
dismissed because he opted into *Bittner* and is pursuing his FLSA claim there.  Baugh's
collective claim should be dismissed because it is duplicative of the collective claim asserted in
*Bittner*. Luevano's collective claim should be dismissed because he is not a member of the
collective as defined by Plaintiffs in the Certification Motion. In short, only Baugh's and
Luevano's individual claims should survive.

As for the Certification Motion, it is rendered moot by the Motion to Dismiss. Should the
Court not grant the Motion to Dismiss, however, the Certification Motion should be denied
because the proposed collective seeks to include individuals who are not similarly situated to
Plaintiffs and/or about whom Plaintiffs offer no evidence, and seeks to include equipment
operators whose collective claims are pending in *Bittner*. If the Court does not deny the

---

[1]Because issues pertaining to the Motion to Dismiss and the Certification Response overlap, BWS is submitting a
single brief in support of the Motion to Dismiss and its Certification Response for purposes of efficiency.

Certification Motion, it should at minimum revise Plaintiffs' proposed collective definition to include only non-exempt pressure pumping field employees other than equipment operators from three years prior to the date of certification to the present, and permit the parties to file additional briefing if they are unable to reach an agreement as to the form and procedure for providing notice.

## II.   BRIEF IN SUPPORT OF MOTION TO DISMISS

### A.   RELEVANT BACKGROUND

#### 1.   *The Pending <u>Bittner</u> Litigation.*

On April 30, 2015, a putative collective and class action was filed in the Southern District of Texas on behalf of equipment operators who worked on BWS's hydraulic fracturing (pressure pumping) crews, in which the named plaintiffs alleged that BWS "fails to include all of the compensation it pays its Equipment Operators when calculating their 'regular rates' for overtime compensation purposes." *Bittner*, Doc. 1 at ¶ 1.[2] The plaintiffs in *Bittner* seek "to recover the unpaid and/or underpaid overtime wages and other damages owed to them and Bayou Well's other similarly-situated Equipment Operators under the FLSA and Colorado state law." *Id.* at ¶ 1; *see id.* at § IX.3. Among the *Bittner* plaintiffs' allegations is that BWS incorrectly calculated the "regular rate" by failing to include certain bonuses. *Id.* at ¶¶ 18, 51.

Because the proposed collective was reasonably tailored and consistent with the allegations in the *Bittner* complaint, BWS did not oppose conditional certification of, and the issuance of notice to, a collective defined to include only individuals employed by BWS in defined equipment operator positions in the hydraulic fracturing (also known as pressure

---

[2]In evaluating a motion to dismiss, this Court may take judicial notice of matters of public record, including federal court filings, without converting the motion into one for summary judgment. *See, e.g., Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (stating "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record").

pumping) business at any time on or after the date three (3) years prior to the date of the filing of the *Bittner* lawsuit. *See Bittner*, Doc. 28 at 1-2. Accordingly, the Court entered an order granting conditional certification and the issuance of notice, which was given on December 3, 2015. *See Bittner*, Doc. 31. The Court imposed an opt-in deadline of February 1, 2016. *Id.* As of that date, more than one hundred participants opted in. *See generally Bittner*. The *Bittner* lawsuit remains pending.

## 2.   *Plaintiffs and Their Claims Here.*

In their current live pleading, the Second Amended Complaint ("Complaint"), Plaintiffs allege that BWS "fail[ed] to include all required remuneration, including non-discretionary bonuses and 'Non Revenue" pay [] into their regular rate of pay when calculating and paying Plaintiffs' and the Class Members' overtime compensation."[3] Doc. 22 at ¶1. Plaintiffs seek to bring a collective action under the FLSA on behalf of BWS's "current and former hourly-paid employees who received non-discretionary bonus or 'non-revenue' pay during the past three years." *Id.* at ¶5. They exclude from that definition only equipment operators who have filed consents to join *Bittner. Id.*

This case is brought by three named plaintiffs: Fulton, who has opted in to the *Bittner* case; Baugh, an equipment operator who would have received the *Bittner* notice but did not opt in; and Luevano, a field electronics technician whose employment with BWS ended in June 2013, more than three years before the Certification Motion was filed. *See Bittner* Doc. 5-6 (Fulton consent to join *Bittner*); Doc. 26-3 ¶ 1 (Baugh declaration stating he was an equipment operator); Doc. 26-5 ¶ 1 (Luevano declaration regarding dates of employment). Additionally, six

---

[3]Neither *Bittner* or this case involves plaintiffs claiming they were misclassified as exempt, that their hours were underreported, or that they were paid "day bonuses" that should have been included in the regular rate of pay (common allegations in FLSA cases involving the oilfield business).

3

individuals have filed consents to join this case if it is certified as a collective action. Doc. 6

(Brent Wise consent); Doc. 14 (Nick Stolz consent); Doc. 15 (Raul Hazelhurst consent); Doc. 16

(Joseph Jacobson consent); Doc. 25 (Derrick Coleman consent); Doc. 23 (Derek Ross consent).

Of those, three individuals had previously opted-in to the *Bittner* case and remain Plaintiffs in

that case. *Bittner*, Doc. 23-8 (Brent Wise consent); *Bittner*, Doc. 33-2 (Derrick Chatman

consent); *Bittner*, Doc. 35-2 (Joseph Jacobson consent).

## B. ARGUMENT

### 1. *Plaintiffs' Collective Claim Alleged on Behalf of Equipment Operators Should Be Dismissed In Deference to Bittner Pursuant to the First-Filed Rule.*

The Court should dismiss the proposed collective action claim asserted on behalf of

equipment operators pursuant to the first-to-file rule, in deference to *Bittner*.

> Under the first-to-file rule, when related cases are pending before two federal
> courts, the court in which the case was last filed may refuse to hear it if the issues
> raised by the cases substantially overlap. The rule rests on principles of comity
> and sound judicial administration. The concern manifestly is to avoid the waste of
> duplication, to avoid rulings which may trench upon the authority of sister courts,
> and to avoid piecemeal resolution of issues that call for a uniform result.

*Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (quotation and

citations omitted). The focal inquiry is whether there is "substantial overlap" between the two

cases. *See Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

"The first-to-file rule is particularly appropriate in the context of competing FLSA

collective actions, which threaten to present overlapping classes, multiple attempts at

certification in two different courts, and complicated settlement negotiations. It is not surprising

that federal courts consistently apply the first-to-file rule to overlapping wage and hour collective

actions." *Ortiz v. Panera Bread Co.*, 2011 WL 3353432, *2 (E.D. Va. Aug. 2, 2011) (citing

cases) (dismissing plaintiffs' individual and collective claims due to first-filed putative collective

action); *see Benavides v. Home Depot USA, Inc.*, 2006 WL 1406722, *2 (S.D. Tex. May 19, 2006) (applying first-to-file rule to collective action claims involving same employees and same FLSA claim to avoid duplication, "piecemeal resolution of issues and the resulting potential for conflicting rulings," and based on "principles of comity and sound judicial administration."); *McLeod v. Just Energy Mktg. Corp.*, C.A. No. 1:15-CV-00368, 2015 U.S. Dist. LEXIS 82685, at *12-13 (N.D. Ohio June 25, 2015) ("[T]his rule grows out of the Court's inherent ability to conserve judicial resources and promote the disposition of cases. This also promotes fairness to defendants, who should not have to litigate multiple collective actions regarding substantially the same conduct at the same time."); *Greene v. H & R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010) (dismissing collective action pursuant to its "authority as part of its inherent power over its docket administration to stay or dismiss a suit that is duplicative of another case then pending in federal court.").

The *Bittner* case and the collective claims brought on behalf of equipment operators here substantially overlap. Both involve an FLSA claim for unpaid overtime on behalf of equipment operators. *Compare Bittner*, Doc. 1, ¶¶ 46-56 *with* Complaint, ¶ 26. Both are based on the same transactions and factual premise: BWS's alleged failure to include all compensation in the regular rate of pay for the purpose of calculating the amount of overtime due on the same hours worked. *Compare Bittner*, Doc. 1 at ¶¶ 1, 18, 25 *with* Complaint at ¶¶ 1, 17, 22. Both seek the same relief: certification of a collective action and an award of unpaid overtime wages, liquidated damages and attorneys' fees and costs. *Compare Bittner*, Doc. 1 at § IX.1 & 3, *with* Complaint at ¶ 26.

That Plaintiffs here include allegations regarding the failure to include in the regular rate additional types of compensation (*i.e.*, non-revenue time) or additional unpaid overtime wages

that are not at issue in *Bittner* does render the first-filed rule inapplicable. The focus is whether the cases substantially overlap, not whether they are identical. For example, a district court easily dismissed plaintiffs' FLSA claims based on the alleged failure to compensate for mandatory training and "off the clock" work and brought on behalf of a nationwide collective of multiple job titles, where it had already conditionally certified a separate FLSA collective action of Miami-Dade County employees alleging failure to pay overtime compensation. The court observed: "it is well settled that a plaintiff may not file duplicative complaints in order to expand their legal rights," "split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." *Id*. at 1367 (citations and quotations omitted). There, seven named and opt-in plaintiffs had filed consents to join the first action, and both cases arose out of the same "nucleus of operative facts" and sought all wages due for all hours worked. *Id*. at 1367-68; *see Thomas v. Apple-Metro, Inc.*, 2015 WL 505384, at *4 (S.D.N.Y. Feb. 5, 2015) (dismissing second collective action claim pursuant to first-filed rule despite its assertion of additional FLSA violation). Likewise, here, the collective claims involve the same equipment operators and seek the same recovery: unpaid overtime for the same hours worked. Four named and opt-in plaintiffs here have opted-into *Bittner*. Dismissal is appropriate given this substantial overlap, to prevent piecemeal litigation of  overtime due to equipment operators.

Similarly, the Court is not prevented from dismissing the collective claim brought on behalf of equipment operators simply because Plaintiffs seek certification of a larger group of employees. In *LaFleur v. Dollar Tree Stores, Inc*., 2012 WL 4739534 (E.D. Va. Oct. 2, 2012), the court took this same action, dismissing collective claims brought on behalf of a subset of the requested class pursuant to the first-filed rule: "To permit FLSA claims to proceed in this case as

6

to [Assistant Store Managers] would be duplicative and wasteful and would directly contravene the spirit and intent of the "first to file" rule, particularly with respect to FLSA collective actions." *Id.* at \*8. That court went on to consider conditional certification of the remaining narrower proposed collective of store associates.

Although some courts have transferred second-filed cases to the court of the first-filed case, dismissal is appropriate here. Equipment operators received notice of the *Bittner* litigation, which advised that "[i]t is entirely your own decision whether [sic] join this case, bring your own case or take no action at all" and that they had to file their consent by the Court's deadline to opt-in. *Bittner*, Doc. 28-1 (agreed notice); Bittner, Doc. 29 (Order approving, *inter alia*, agreed notice). Transferring the collective claims asserted on behalf of equipment operators would circumvent the *Bittner* Court's notice and opt-in deadline and delay that litigation. *See Greene*, 727 F. Supp. 2d at 1368 ("Consolidating the instant matter with [the first-filed case] would have the unacceptable consequence of allowing additional conditional plaintiffs to join [the first-filed case] beyond this Court's mandated deadline for doing so. The Court will not permit such back-door entry into a conditional class that has been closed after an appropriate notice period."); *Thomas*, 2015 WL 505384, at \*5 (dismissing collective claims rather than transferring or staying them).

Accordingly, the Court should dismiss the FLSA collective action claims brought on behalf of equipment operators.

### 2. *Plaintiff Fulton's Claims Should be Dismissed Because He Opted In to the Bittner Case and is Pursuing His FLSA Claim for Overtime There.*

Fulton opted into the *Bittner* case on May 14, 2015. *Bittner*, Doc. 5-6. As such, his individual and collective FLSA claim should be dismissed as duplicative of his *Bittner* claims. *See Copello v. Boehringer Ingelheim Pharm., Inc*., 812 F. Supp. 2d 886, 888–90 (N.D. Ill. 2011)

(dismissing one named plaintiff's individual and collective action FLSA claim because she had already opted in to first-filed, ongoing FLSA action in different federal court); *McLeod*, 2015 U.S. LEXIS 82685, at *13-14 (dismissing state law individual and class claims for unpaid overtime asserted by plaintiff who was member of class action certified in another case). That Fulton alleges additional facts here beyond those facts alleged in *Bittner*, such as other specific compensation that was not included in the regular rate, does not entitle Fulton to proceed with this lawsuit. A plaintiff cannot split his claims among multiple proceedings.

> [T]he rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action. In a claim splitting case, the second suit will be barred if the claims involves the same parties and arises out of the same transaction or series of transactions as the first claim.

*Thomas v. Beaumont Indep. Sch. Dist.*, 2016 WL 922182, at *3 (E.D. Tex. Feb. 12, 2016) (quotation and citations omitted). Both lawsuits involve allegations of unpaid overtime compensation for the same hours worked against the same employer. Fulton should be dismissed from this case.

### 3.  *Equipment Operator Baugh's Collective Claim Should Be Dismissed.*

Baugh, a former equipment operator, is within the certified collective in *Bittner* but chose not to opt-in. As such, although Baugh has the right to pursue his individual claim for overtime here, the Court should dismiss his collective claim as duplicative of the *Bittner* litigation. *See Medina v. Brothers Behrman Hwy, Inc.*, C.A. No. 2:13-cv-04831, 2015 WL 3679534, at *3 (E.D. La. June 12, 2015) ("[A]lthough the FLSA does not preclude plaintiff [who received notice of first filed case but did not opt-in] from maintaining an independent, individual action, plaintiff is not entitled to conditional certification of a class that is entirely duplicative of the conditionally certified class in [first-filed case]"); *Alvarez v. Gold Belt, LLC*, C.A. No. 08-4871, 2011 WL 1337457, at *2 (D.N.J. Apr. 7, 2011) ("Because the [first-filed] action has been conditionally

certified, plaintiff must choose between opting in to that action, or continuing independently with his own action here. Certification of a separate collective action is not available to plaintiff at this time.").

Baugh should not be permitted to circumvent the *Bittner* collective action by seeking to represent either employees holding other positions or equipment operators who declined to opt-in to *Bittner*. As one court explained, in dismissing collective claims alleged on behalf of a larger group of employees than were included in a previously-filed collective action by plaintiffs who had received notice in that prior case:

> True, the putative collective action would include these [additional] employees. But the collective action would also include a great number of people who received notice of and could have opted into the [first-filed] action, *including the named plaintiffs in this case*. Once again, although a subset of the proposed class may have claims that are distinct from [the first-filed case], that does not mean these Plaintiffs do.

*McLeod*, 2015 U.S. LEXIS 82685, at *13 (emphasis in original); *see Alvarez*, 2011 WL 1337457, at *1-2 (rejecting request of plaintiff, who did not opt in to first-filed collective action, to certify a class involving the same position but different employment dates). Baugh's collective claims are not distinct from those in *Bittner*. While he can pursue his individual claims here, Baugh's collective claims should be dismissed.

> **4.    *Plaintiff Luevano's Collective Claim Should Be Dismissed Because He is Not a Member of the Collective on Whose Behalf He Seeks To Pursue an FLSA Claim.***

Luevano was employed "from approximately August 2011 to June 2013." Doc. 26-5 at ¶1. His employment ceased more than three years before the date Plaintiffs filed their Certification Motion. Because any collective this Court might certify could only include individuals who were employed within three years of the notice date and the filing date of

individual consent, Luevano is not a member of the collective he seeks to represent. His collective claim should be dismissed.

## III.     BRIEF IN SUPPORT OF CERTIFICATION RESPONSE

### A.     RELEVANT FACTS

**1.     *All Named Plaintiffs And Declarants Worked Only In BWS's Pressure Pumping Business Line, Which Did Not Overlap With Its Other Business Line.***

BWS provides (or provided) separate and distinct oil field services through two business lines—pressure pumping and workover services.  Declaration of Goldie Afshar at ¶2 ("Afshar Dec."), attached as Exhibit A (App. pp. 3-5). Its workover business has been operating for several years, and continues to provide some oilfield services. *Id.* However, as a result of the downturn in the energy industry, its pressure pumping business only operated from April 2011 until May 2015. *Id.*

During the time both business lines were in service, they were operationally segregated day-to-day; that is, employees from the pressure pumping side did not work with workover employees, and vice versa. Afshar Dec. (App. pp. 3-5) at ¶3. Moreover, employees from the pressure pumping and workover sides had different supervisors and management, were assigned to different types of schedules, worked at different well sites, and were eligible for different types of bonuses. *Id.*

Plaintiffs and the opt-ins who provided declarations in support of the Certification Motion all worked for the pressure pumping business line. Afshar Dec. (App. pp. 3-5) at ¶9. Moreover, the employees identified in their declarations as being interested in participating in this lawsuit were all former employees of the pressure pumping business line (save for one person which BWS has no record of employing). *Id.* at ¶11.

**2.**      ***Named Plaintiffs And Declarants Did Not Receive A Non-Discretionary "Safety Bonus" But Were Eligible To Participant In A Discretionary Team Incentive Plan.***

Plaintiffs allege that BWS paid them, and other employees, a non-discretionary "safety bonus" that was not incorporated into the regular rate. *See* Motion at p. 1; Motion Exs. 3, 4, and 5 at ¶2 (Plaintiffs' Declarations). However, Plaintiffs and declarants, who were all pressure pumping employees, did not receive a "safety bonus" from BWS, as BWS did not pay pressure pumping employees "safety bonuses." Afshar Dec. (App. pp. 3-5) at ¶4.

Rather, BWS had a discretionary bonus plan called the Team Incentive Plan ("TIP") for "eligible Pressure Pumping employees."  Afshar Dec. (App. pp. 3-5) at ¶4 ; Ex. A to Afshar Dec (Team Incentive Plan) (App. p. 7). The TIP permitted the discretionary award of a quarterly incentive for eligible pressure pumping employees' achievement of client expectations related to safety, environment, and operational efficiency.[4] *Id*. Plaintiffs were TIP-eligible, but not all BWS employees were. *Id*. at ¶5 and ¶10. The TIP only applied to certain pressure pumping employees. *Id*. at ¶¶4-5. No employees in the workover business line were eligible to participate in the TIP. *Id*. at ¶5.

**3.**      ***Only Field Employees In The Pressure Pumping Business Line, Including Named Plaintiffs and Declarants, Worked A Schedule That Made Them Eligible For Non-Revenue Pay.***

Plaintiffs complain, *inter alia*, that they were paid for "non-revenue" time and that payments for non-revenue time were not included in the regular rate of pay. Certification Motion pp. 1-2. However, they do not specify what the "non-revenue" payments were, either in the Certification Motion or in the supporting Declarations. Defendants believe that the "non-revenue" time payments about which they complain were not bonuses or other compensation

---

[4]BWS contends that, although the TIP provided a discretionary award, it nonetheless paid both the bonus plus additional overtime attributable to the regular rate increase resulting from the bonus.

includible in the regular rate of pay, but were payments made as a result of BWS's agreement to treat forty (40) hours as paid work time during each workweek in which non-exempt pressure pumping field employees were not scheduled to work any hours.

Some pressure pumping employees, including Plaintiffs, worked primarily in the oilfield providing services at client job sites ("Field Employees"). Afshar Dec. (App. pp. 3-5) at ¶6. Those Field Employees were scheduled to work in pressure pumping twelve hours per day on two-week rotations during which they worked at client job sites. *Id*.  During these rotations, their time was tracked and they were paid for all hours worked, as well as travel time. *Id*. at ¶7. In the two weeks between their rotations, Field Employees were prohibited from working for a competitor and were expected to rest. *Id*.  Thus, BWS agreed to treat forty (40) hours during each of these off workweeks as paid time, despite such time being considered "non-revenue" time. *Id*. In other words, BWS paid the Field Employees forty hours of pay at their base rate[5] for each unscheduled workweek.  *Id*. Consistent with its agreement that the forty (40) hours was paid time, BWS paid any Field Employee who engaged in field work at its request during his unscheduled week for his additional hours worked, in addition to paying him for the forty (40) hours of non-revenue time. *Id*.

Only Field Employees working in the pressure pumping business were paid for non-revenue hours associated with unscheduled time as described herein.  Afshar Dec. (App. pp. 3-5) at ¶8. In contrast to Field Employees, some pressure pumping employees worked at BWS shops repairing equipment or in administration (collectively, "Shop Employees").  *Id*. at ¶6. Shop Employees did not work a two-week on, two-week off rotational schedule, and BWS did not pay them "non-revenue" pay during any non-working time. *Id*. at ¶8. Likewise, Shop Employees did

---

[5]The base hourly rates BWS paid were comparable to the base hourly rates other employers paid. Afshar Dec. (App. pp. 3-5) at ¶7. In fact, each of the Plaintiffs were paid more per hour at BWS than at their prior jobs. *Id*.

not work in the oilfield at client job sites, but rather worked at an assigned location that did not vary. *Id*. at ¶6.

Likewise, employees in BWS' workover business were not paid "non-revenue" pay for off-hitch rotations in the same manner as Field Employees. Afshar Dec. (App. pp. 3-5) at ¶8. Each Plaintiff and declarant worked (at some point) as a Field Employee, and thus would have been paid for non-revenue hours for unscheduled time as Field Employees – but only as a Field Employee. *Id*. at ¶10.

### 4. *Plaintiffs' Allegations Regarding "Travel Pay" Are Unique To Them.*

There are no allegations regarding "travel" pay in the Certification Motion or Declarations. However, in the Complaint, Plaintiffs vaguely allege that BWS did not pay them for one and one-half times their "travel" pay rate for all travel hours worked in excess of forty (40) hours in a workweek. *See* Doc. 21-1 at ¶22. Plaintiffs do not identify what their "travel pay rate" is, nor what positions were subject to this alleged deficiency. In fact, BWS's practice was to pay non-exempt Field Employees for all travel time between their hotel and the job site at their regular rate (or the applicable overtime rate for hours worked over forty). Afshar Dec. (App. pp. 3-5) at ¶13. Thus, any experiences to the contrary would be highly unusual and individualized.

### B.   OPPOSITION TO CONDITIONAL CERTIFICATION AND NOTICE

#### 1. *Conditional Certification Should Be Denied Because The Certification Motion Is Moot.*

If the Court grants BWS's Motion to Dismiss, the Certification Motion is moot and should be denied. As argued above, none of the named Plaintiffs can assert collective claims. Fulton is pursuing substantially the same claims as an opt-in plaintiff in *Bittner*.  Baugh was part of the defined collective receiving notice in *Bittner*, therefore he cannot pursue duplicative

collective claims here. And Luevano is not a member of any collective the Court might conditionally certify due to the expiration of the statute of limitations on his claims.  As such, no collective claims remain in this lawsuit.

Even if the Court does not dismiss each Plaintiff's collective claim (which it should), if it dismisses the collective claims brought on behalf of the equipment operators, Plaintiffs' Motion is mooted, and should be denied, to the extent that it requests conditional certification on behalf of equipment operators. Eliminating that group of employees significantly reduces both the size and the scope of the collective sought by Plaintiffs.

### 2.  *Legal Standard for Conditional Certification.*

To certify a collective action under the FLSA, "the plaintiff bears the burden of making the preliminary factual showing that a similarly situated group of potential plaintiffs exists." *Morgan v. Rig Power, Inc.*, No. 7:15-CV-73-DAE, 2015 U.S. Dist. LEXIS 166644, at * 7 (W.D. Tex. Dec. 10, 2015); *see also Lentz v. Spanky's Rest. II, Inc*., 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007) ("The court must satisfy itself that other 'similarly situated' individuals justify notice because they desire to opt-in and are 'similarly situated' with respect to job requirements and with regard to their pay provisions"). Specifically, a plaintiff must show: "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff[s] in relevant aspects given the claims and defenses asserted, and (3) that those individuals want to opt in to the lawsuit." *Huamen v. Ojos Locos Sports Cantina LLC,* 3:13-CV-4938-B, 2014 WL 4081554, at*3 (N.D. Tex. Aug. 19, 2014), *quoting Morales v. Thang Hung Corp*., No. 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009).  "Though plaintiffs are held to a 'lenient standard,' the decision to create an opt-in class under § 216(b) remains soundly within the discretion of the district court." *Mateos v. Select Energy Servs., LLC*, 977 F. Supp. 2d 640, 644 (W.D. Tex. 2013); *see also Huamen* at *2

14

(noting that district courts have discretion to allow a party asserting claims to notify other potential plaintiffs).

        **3.**     ***Certification Should Be Denied Because the Proposed Collective Seeks To Include Individuals About Whom Named Plaintiffs Offer No Evidence.***

Plaintiffs wish to certify a collective action as to the following persons:

> All hourly paid workers who received a safety bonus or "non-revenue" pay who worked for Bayou Well Services, LLC from June 16, 2013 to the present.

Doc. 26 p. 4. The scope of the requested collective is inconsistent with the evidence Plaintiffs submit.

        *a.*     ***Plaintiffs Only Offer Evidence Regarding Pressure Pumping Employees.***

Plaintiffs only worked in BWS's pressure pumping business. Furthermore, they only present declarations from former pressure pumping employees in support of the Certification Motion. *See* Afshar Dec. (App. pp. 3-5) at ¶9. Plaintiffs offer no evidence as to the way employees in BWS's workover business were paid, and they do not establish that they have any personal or secondhand knowledge of such information, which would be unlikely given that workover employees did not work with pressure pumping employees or at the same client job sites. *See id.* at ¶3. Indeed, the employees identified in Plaintiffs' supporting declarations as allegedly eligible to participate in this lawsuit (save for one who does not appear to have been employed by BWS) were all employed in the pressure pumping business line. *Id.* at ¶10.

Given Plaintiffs' failure to submit any evidence that the complained-of practices affected employees outside the pressure pumping business line, Plaintiff's proposed collective definition (which spans all of BWS, and not just the pressure pumping business) is overly broad. *See, e.g., Lawton v. Arc Pressure Data, Inc.,* No. 3:15-cv-01279-N, at n.8 (Godbey, J.) (copy attached as Exhibit B hereto, App. p. 9) ("Courts can ferret out putative FLSA collective actions undeserving

15

of conditional certification by comparing the scope of requested discovery and certification to the scope of the underlying policy giving rise to the suit"); *Flowers v. MGTI, LLC*, C.A. No. H-11-1235, 2012 WL 1941755, at \*4 (S.D. Tex. May 29, 2012) (granting motion for notice as to one location, but denying it as to another where there was no evidence presented that the complained-of policies existed at that location); *Yerger v. Liberty Mut. Ins. Group*, No. 5:11-DV-238-D, 2011 WL 5593151, at \*5 (noting, in denying conditional certification, *inter alia*, that all persons who submitted declarations in support of motion worked in only one business line); *Tolentino v. C&J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 652 (S.D. Tex. 2010) (granting conditional certification only as to employees of one division, where there was no evidence employees in other divisions were similarly situated). Plaintiffs' proposed collective definition is not limited to employees in the pressure pumping business, and thus certification should be denied, or in the alternative, appropriately limited.

### b. Plaintiffs Only Offer Evidence Regarding Field Employees.

Plaintiffs and declarants all worked at some point as Field Employees. Afshar Dec. (App. pp. 3-5) at ¶9. The nearly-identical declarations they submitted in support of the Certification Motion describe only their employment as Field Employees: each states that he "worked on Defendant's job sites" and described his job "to perform oilfield labors services" and, specifically, to operate or maintain equipment "in the oilfield" (¶1); each attests that he was paid *both* a safety bonus *and* "non-revenue" pay (¶2); each "understands" that other employees also "performed oilfield labor service" and "observed" other employees "performing the same or similar duties," which were "a product of working as an equipment operator" (¶3); each describes that "[a]s an oilfield worker, I and other oilfield workers often worked in remote locations far away from our homes for extended periods of time" and "often work, eat, and sleep at or near job sites which are not near my home for days or even weeks at a time" (¶4).

The declarations do not describe Shop Employees.  Shop Employees are dissimilarly situated to Field Employees in that their job duties and schedules are different, and they did not receive non-revenue pay for unscheduled time. Afshar Dec. (App. pp. 3-5) at ¶6 and ¶8.

Therefore Plaintiffs fail to demonstrate that non-field employees should be included in the collective.

> **4.      *Conditional Certification Should Be Denied Because The Proposed Collective Includes Equipment Operators, Whose Collective Claims Are Pending In <u>Bittner</u>.***

The Court should deny certification of a collective that includes of equipment operators in deference to *Bittner*. The same principles of judicial comity and the avoidance of duplicative proceedings and wasted judicial resources discussed in support of BWS's Motion to Dismiss, above, also dictate that a request for conditional certification of, and the issuance of notice to, a collective comprised of substantially similar individuals on whose behalf substantially overlapping claims are pending in another federal court should also be denied.  *See Medina v. Brothers Behrman Hwy, Inc.*, 2015 WL 3679534 (E.D. La. June 12, 2015) ("the principles underlying the first to file rule—the avoidance of duplicative litigation and the interests of judicial economy—require the Court to deny plaintiff's motion to certify a second collective action in this case").

In *Alvarez v. Gold Belt LLC*, 2011 WL 1337457 (D.N.J. Apr. 7, 2011), the court twice denied class certification in deference to a first-filed case involving essentially the same plaintiffs, defendants and claims.

> Previously, in considering the class certification issue, the Court found that judicial comity – under the principles of the first-filed rule and law of the case doctrine – required this Court to defer to [the district judge] in the essentially identical case filed first before him, *Manning* . . . . The Court found that because in this case and in *Manning* the plaintiffs are essentially the same, the defendants are the same, and the claims are the same, this case presents the potential for the waste of judicial resources and the duplication of two courts' efforts. The Court

17

> also found that a failure to defer to the first-filed case would have the potential for inconsistency in the determination of the legal issues, which would cause turmoil for the parties and for the state of the law.

*Id.* at *1 (quotation omitted). After the first-filed court certified a collective action and ordered the issuance of notice, the *Alvarez* plaintiff moved again for certification of a class that was identical except for the employment dates. The court concluded that "certification of a separate collective action would be improper" for the same reasons. *Id* at *2.

That Plaintiffs here propose to limit their collective to equipment operators who have not opted-in to *Bittner* does not save it.

> Plaintiff's assertion that this case will accept as plaintiffs only those who have not opted in to [the previously-filed case] makes this litigation no less piecemeal. The class description is the same, as are the potential plaintiffs – whether or not they have decided to opt-in to [the previously-filed case.] Also identical is the relief sought – the payment of overtime compensation.

*Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 404 (W.D.N.Y. 2013). Sending a second notice to the same equipment operators is improper. "Defendants should not be required to send a second class notice to individuals who have already received such notice but have elected not to participate in [the previously-filed case]. Indeed, it is precisely such concerns that have led courts here and in other jurisdictions to dismiss or transfer second filed FLSA actions in favor of an earlier filed similar action." *Id.* at 405. The collective FLSA claim for overtime on behalf of equipment operators is currently being litigated in *Bittner.* This Court should deny conditional certification of a collective action that includes any equipment operators.

**5.      *Conditional Certification Should Be Denied Because The Individual Named Plaintiffs Are Not Similarly Situated To The Proposed Collective.***

None of the Named Plaintiffs are similarly-situated to the proposed collective. The proposed class explicitly excludes individuals who had opted in to the *Bittner* action. Fulton has opted-in to *Bittner*, therefore is not similarly situated to the proposed class. *Bittner* Doc. 5-6.

Luevano's employment ended more than three years ago. Doc. 26-3 ¶ 1. His individual claims are based on a four-month period that is outside the class limitations period. Any individual who received notice and opted in would be seeking recovery for overtime allegedly due for a period of time in which Luevano was not employed by BWS. Luevano is not similarly situated to the proposed collective of which he is not a member. Moreover, because Luevano's employment ended two years and eight months before the complaint in this case was filed, his claim is dependent on establishing a willful violation. Accordingly, he is not similarly situated to individuals whose claims are based on their employment within the two years prior to the filing of their consent and are not dependent upon establishing a willful violation.

Because, as argued above, the Court should not include equipment operators in the collective, Baugh is excluded from and not similarly situated to any remaining proposed collective of field employees whom the Court might consider for certification.

Additionally Plaintiffs assert that BWS failed to pay them time and half for their "travel time"—an allegation that BWS disputes. *See* Doc. 21-1 at ¶22. This allegation is not mentioned in the Motion, and thus is appears that Plaintiffs are making individualized claims regarding "travel time." For this additional reason, Plaintiffs are not similarly situated to the putative collective action members they wish to represent, and they should not represent the class.

Without a named plaintiff who is similarly situated to a collective that is otherwise appropriate for conditional certification, Plaintiffs' Certification Motion should be denied.

### C.   BWS OBJECTS TO THE PROPOSED NOTICE AND METHODS OF NOTIFICATION

Although Defendant objects to the certification of any collective action or the issuance of any notice, out of an abundance of caution, it makes the following objections:

### 1.   *Notice By Email Is Unnecessary as is the Requested Production of Potential Plaintiffs' Email Addresses and Telephone Numbers.*

Plaintiffs' request to send a notice by e-mail, in addition to first class mail, overreaches. *See* Certification Motion at pp. 9-10. Courts, including those in this district, have routinely held that Section 216(b) notices should ordinarily be sent only by first-class mail. There is simply "no apparent reason to conclude that sending a letter to a person's last known address will be inadequate." *Nguyen v. Versacom, LLC*, 3:13-CV-4689-D, 2015 WL 1400564, at *13 (N.D. Tex. Mar. 27, 2015) (pointing out the "broad remedial purpose" of the FLSA did not justify notice by means other than first-class mail).

To manufacture a justification for two methods of notice, Plaintiffs' offer identical statements claiming that they "and other oilfield workers often *worked* in remote locations far away from our homes for extended periods of time." Doc. 26-3 – Doc. 26-8 at ¶ 4 (emphasis added). As is acknowledged by the use of the past tense in this statement, neither Plaintiffs, nor declarants, nor *any* pressure pumping employee currently work for Defendant. *See* Afshar Dec. (App. pp. 3-5) at ¶2 (noting pressure pumping business only operated until May 2015). Plaintiffs do not provide any evidence that any potential class member is unlikely to receive first-class mail at their home addresses, either due to their current work or otherwise. A first-class mailing of the approved notice and consent form is presumptively sufficient.

Plaintiff are not entitled to the production of email addresses and telephone numbers of potential class members, as that information is unnecessary to provide notice. "[T]his Court has found it proper initially to order only the production of 'the full names (including middle

20

names[,] if known), last known addresses, and dates of employment for all individuals to whom notice may be sent.'" *Roberts v. S.B. S. Welding, LLC*, 3:14-CV-3617-B, 2015 WL 8773610, at *3 (N.D. Tex. Dec. 15, 2015) (citing *Aguayo v. Bassam Odeh, Inc.*, No. 13-CV-2951, 2014 WL 737314, at *6 (N.D. Tex. Feb. 26, 2014)) (alterations in original). The privacy interests of putative class members, who have not yet consented to participate in this action, should not be unnecessarily compromised. Plaintiffs do not explain any need for proposed class members' telephone numbers. They do not request permission to contact potential class members. Any such contact is not only unnecessary but also is inappropriate and risks becoming, or being perceived as, coercive, intimidating and an attempt to exercise undue influence in circumvention of Rule 7.03(a) and comment 1 of the Texas Disciplinary Rules of Professional Conduct, which otherwise prohibit such direct contact.

### 2.   *Workplace Posting Is Inappropriate.*

Plaintiffs request that the Court order Defendant to post the Notice and Consent form at each location where putative class members report to work due to their "onerous work schedule[s]." Certification Motion at 10. However, BWS ceased operating its pressure pumping business in May 2015. *See* Afshar Dec. (App. pp. 3-5) at ¶2. As such, it no longer employs individuals in the pressure pumping business line, and there are no locations at which to post such a notice. While BWS continues to operate its workover business, as established above, workover employees are not similarly situated to Plaintiffs and should not be included in any conditionally certified collective. Thus, posting a notice at any BWS locations fails to achieve the purpose of the notice. It is further is improper to the extent that field locations are well sites controlled by customers rather than by BWS. *See* Afshar Dec. (App. pp. 3-5) at ¶6. Regardless, posting a notice is not justified because by first-class mail is sufficient. Accordingly, the Court should decline to order any worksite posting.

### 3.   *The Consent Form Should Be Limited to Joining This Case.*

An individual who signs Plaintiffs' proposed consent form does not only join <u>this matter</u> as an opt-in plaintiff, as authorized by Section 216(b) and anticipated by conditional certification. Rather, he also designates Plaintiffs *and their attorneys*, as well as "*other persons those individuals designate as necessary*," including "*other attorneys with whom [Plaintiffs' counsel] may associate*" as his representatives <u>not only in this litigation</u>, but "*in any subsequent action that may be filed on my behalf.*" An individual thereby engages Plaintiffs' counsel to pursue "overtime wages against my current/former employer" without any other limitation, in this case or any other. Such an overreaching consent is not only contrary to the terms of an acceptable notice but is deceptive and unfair to the consenting individual.  Plaintiffs' counsel should be precluded from signing up clients, without limitation, through a judicially-authorized notice. The consent is improper.

### 4.   *The Proposed Notice Is One-Sided and Misleading.*

Plaintiffs propose a one-sided, misleading notice that makes no effort to ensure neutrality. It is not constrained to this case, this Court, or the named plaintiffs, none of which it identifies. Looking like an advertisement, rather than a court-approved notice, its heading announces: "If you worked as an <u>Hourly Paid Employee</u> for <u>Bayou Well Services, LLC</u>, you may be owed <u>unpaid wages</u>." It starkly warns recipients that "you may be affected by this lawsuit" then provides a lengthy, repetitive, vague, inaccurate, and one-sided description of unidentified former hourly paid employees' lawsuit. It not only fails to set forth BWS's position in the litigation, in equally specific detail, but omits altogether that BWS disputes the allegations.

The proposed notice presents a similarly misleading explanation of proposed class members' options and consequences. Through the cumulative effect of one-sided language, it implies the merits of Plaintiffs' claims and implicitly encourages individuals to assert their rights

in this case and thereby share in the money awarded.[6] It fails to mention any potential obligations, such as the requirement to participate in written discovery or to testify in deposition or in Court under oath, or any potential downside, such as the possible liability for costs if they do not prevail[7] or the possibility of decertification and exclusion from the case. And the notice buries amidst the repeated positives of the case, and after its warning that "[i]f you do not assert your rights in this case, you will not share in any money awarded in this case," the single statement: "If you do not wish to join the lawsuit as a plaintiff, you are free to take action on your own or do nothing." It does not advise potential class members of their right to engage their own attorney in the matter or to consult with their own attorney regarding whether to participate in this matter, but rather presents Lee & Braziel, LLP as "*the workers' attorneys*." This language, together with the proposed consent form, would improperly "cause an opt-in plaintiff to believe she must retain Plaintiffs' counsel . . . ." *Graham v. Jet Specialty, Inc.*, MO-15-CV-135-DAE, 2016 WL 154846, at *7 (W.D. Tex. Jan. 11, 2016); *see also Tolentino v. C&J Spec-Rent Serv. Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010) ("[T]he notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case . . . .").

The Notice fails to explain anywhere in the body of the Notice -- despite using heading such as "What's This About?" and "What Can I Get?" -- that the Court has not decided whether Plaintiffs or BWS is right or whether Plaintiffs should recover any money. Instead, it only

---

[6] The Notice states: "you may be owed <u>unpaid wages</u>;" "you may be affected by this lawsuit;" "The lawsuit claims that BWS paid its hourly paid employees overtime <u>at below the legally required rate</u>."; "The lawsuit specifically alleges that BWS failed to pay overtime in compliance with law by . . . paying hourly paid workers overtime at <u>less than the legally required rate</u>."; "you have a choice to assert your legal rights in this case if you desire to do so. If you do not choose to assert your rights in this case, you will not share in any money awarded in this case."; "If you join the lawsuit, you will *not* have to pay the lawyers *anything* out of pocket – win or lose."; "If the workers win you may get . . . ."; "How Do I Join the Lawsuit?"; "If you want to participate in the lawsuit . . .". Doc. 26-1(emphasis in original).

[7] *See Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 524 (N.D. Tex. 2014) (sustaining objection because notice failed to "apprise potential opt-in plaintiffs that they may be required to pay taxable court costs if the judgment is unfavorable to them").

mentions, in the footer, that the Court "approved this Notice but takes no position on the merits of the case." And again, even there, it does not identify either the Northern District of Texas or the presiding District Judge in this case.

The Notice likely overstates class members' potential recovery. It advises first that a consenting individual "will *not* have to pay the lawyers *anything* out of pocket – win or lose" and then that "[i]f the workers win, you may get an amount up to <u>two times the unpaid overtime wages</u> you should have received as well as attorneys' fees and costs." (Emphasis in original). This language, together, implies that consenting individuals, if they prevail, would receive a net recovery of "two times their unpaid wages," *plus* additional attorneys' fees and costs that do not reduce what each plaintiff puts in his pocket. Yet Plaintiffs do not disclose their agreement with their counsel regarding the payment of attorneys' fees and costs in the event if they prevail, which based on the promise that plaintiffs pay nothing out of pocket is certainly a contingent fee agreement. *See* Tex. Disc. R. Prof. Cond., Rules 1.04(c), (d) (requiring communication of the basis or rate of fees to a client and that a contingent fee agreement be in writing).  Read as a whole, the proposed Notice is one-side and misleading and should be outright rejected.

## IV.    CONCLUSION

BWS respectfully requests the dismissal of Fulton's individual claim, Baugh's collective claim, and Luevano's collective claim, as well as Plaintiffs' collective claims as to equipment operators. BWS further requests that the Court deny the Certification Motion in its entirety. Alternatively, if a collective action is conditionally certified and notice is permitted, BWS requests that the Court modify the definition of the collective to include only non-exempt pressure pumping field employees from three years prior to the date of certification to the present, and to permit the parties to file additional briefing if they are unable to reach an agreement as to the form and procedure for providing notice.

Respectfully submitted,

VINSON & ELKINS L.L.P.


*/s/ Douglas E. Hamel*
DOUGLAS E. HAMEL, Attorney-in-Charge
State Bar No. 08818300
VANETTA L. CHRIST
State Bar No. 24050417
1001 Fannin Street, Suite 2500
Houston, TX  77002-6760
Telephone: 713.758.2036
Facsimile:   713.615.5388
dhamel@velaw.com
lchrist@velaw.com

JOHN C. WANDER
State Bar No. 00791877
MARGARET TERWEY
State Bar No. 24087454
2001 Ross Avenue, Suite 3700
Dallas, TX 75201
Telephone:  214.220.7918
Facsimile:   214.999.7918
jwander@velaw.com
mterwey@velaw.com

**Attorneys for Defendant,**
**BAYOU WELL SERVICES, LLC**


## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July, 2016, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF System and was automatically copied to all parties through the Court's electronic filing system.


*/s/ Douglas E. Hamel*
Attorney for Defendant

25

US 4442153