IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANKIE FULTON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-00474-N |
| | § | |
| BAYOU WELL SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Bayou Well Services LLC ("Bayou") and Plaintiffs' motions for summary judgment [79, 88]. For the reasons set forth below, the Court grants in part and denies in part Bayou's motion for summary judgment [79] and denies Plaintiffs' motion for summary judgment [88].

## I. ORIGINS OF THE DISPUTE

This case arises from Plaintiffs' employment at Bayou.[1] Bayou provides well site support services for oil and gas operations. The Plaintiffs are hourly paid, nonexempt employees performing oilfield labor services. Bayou employed Plaintiffs as oil field workers on a two-week-on, two-week-off rotational schedule. For the two weeks during which

---

[1] In September 2016, the Court conditionally certified a collective action consisting of Bayou's "current and former hourly-paid employees who received non-discretionary bonus or 'non-revenue' pay during the past three years." Order 7 [45]. Of the 162 people who opted in to the collective action, 117 plaintiffs have settled all their claims against Bayou. Only 45 remaining plaintiffs/opt-in class members are not covered by the settlement agreement.

Plaintiffs were on rotation ("on-rotation workweeks"), Bayou paid Plaintiffs at their regular hourly rate for the first 40 work hours and at 1.5 times their regular rate for hours worked in excess of 40. For the two weeks during which Plaintiffs were off work ("off-rotation workweeks"), Bayou paid Plaintiffs for 40 hours of work at their regular rate despite the fact that Plaintiffs were not in the field. Bayou also paid Plaintiffs at their regular hourly rate for time spent traveling to and from job sites.

Bayou paid Plaintiffs for 40 hours of work during off-rotation workweeks no matter how many hours Plaintiffs worked during on-rotation workweeks. Plaintiffs were not permitted to work for a competitor during off-rotation workweeks, and performing any work during off-rotation weeks was generally frowned upon. But if Plaintiffs voluntarily did any fieldwork for Bayou during an off-rotation workweek, Bayou paid them at 1.5 times their hourly rate for the additional hours. Bayou asserts that it adopted this compensation policy to ensure that Plaintiffs had enough time to recover from on-rotation workweeks, during which they spent approximately 12 hours a day engaged in mentally and physically demanding work and spent up to three hours traveling to and from the job site for 14 consecutive days.

Plaintiffs were also eligible for Bayou's Team Incentive Plan ("TIP"). The TIP provided for quarterly incentive payments to be paid at Bayou's discretion based on employees' achievement of certain safety, environmental, and operational efficiency goals. Bayou introduced its third amended TIP ("TIP 3") in November 2013. TIP 3 provided for set bonus amounts paid at Bayou's discretion based on particular performance metrics and

indicated that the total bonus employees received would include both the bonus amount and overtime attributable to the bonus amount. *See* Def.'s App. in Supp. of Mot. for Sum. J. ("Def.'s App.") 137 [81].

Plaintiffs allege that they were routinely underpaid for overtime as a result of Bayou's rotational pay and bonus policies in violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (the "FLSA"). Both parties now move for summary judgment on their claims.

## II. LEGAL STANDARD

### A. Legal Standard on Motion for Summary Judgment

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to

summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. Legal Standard for Overtime Pay Under the FLSA

The FLSA prohibits an employer from employing an employee "for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(2). The FLSA defines the "regular rate" to include "all remuneration for employment" with certain exclusions. *Id*. § 207(e). The FLSA does not set forth the method for calculating the regular rate, but the

United States Department of Labor (the "Department of Labor") has explained in interpretive regulations that the "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.

### III. BAYOU'S ROTATIONAL PAY POLICY COMPLIED WITH THE FLSA

Both Bayou and Plaintiffs move for summary judgment regarding whether Bayou's rotational pay plan violates the FLSA. The Court grants Bayou's motion and denies Plaintiffs' motion.

Plaintiffs claim that Bayou's rotational pay scheme violates the FLSA. Plaintiffs argue that they actually *earned* off-rotation compensation during on-rotation workweeks. *See* Pls.' Resp. to Bayou's Mot. For Sum. J. ("Pls.' Resp.") 31 [91] ("The pay for a fictitious 40 hours of work during weeks off (which only exist on pay stubs) is clearly earned for work performed during weeks-on based on [Bayou's] claim that it paid [Plaintiffs] to rest during their two weeks off to maximize their ability to meet performance metrics during weeks on." (emphasis omitted)). They assert that the FLSA therefore requires Bayou to allocate off-rotation compensation to on-rotation workweeks for purposes of calculating overtime. But Plaintiffs point to no evidence in the record that they actually earned the off-rotation pay during on-rotation, as opposed to off-rotation, workweeks.

Plaintiffs further claim that Bayou spread their compensation over both on- and off-rotation weeks only to give Plaintiffs a more consistent flow of income and train them

not to spend all their money too quickly.  In support of their assertion, Plaintiffs point to a quotation from Brett Agee, Bayou's corporate representative:

> I don't think it's curious to the oilfield worker, but what – it's been my experience that if you were to pay one of these people – any person typically in an oilfield field personnel-type role, if you were to pay them a million dollars once a month . . . versus spreading it out over multiple paychecks a month, you would find that you have a better chance of training your employees better by going ahead and trying to pay them in more installments . . . .
>
> [P]eople live paycheck to paycheck regardless of the amount that you make . . . .  And so you want to try and go ahead and create a situation where you're not only – we were not only going ahead and addressing the needs of ourselves and our customer but of our employees as well.  They were earning a paycheck while they were being asked to perform zero work.

Pls.' App. in Supp. of Resp. to Def.'s Mot. for Sum. J. ("Pls.' Resp. App.") 60–62 [92]. Plaintiffs argue that this case is thus substantially identical to *Sandel v. Fairfield Industries, Inc.*, 2015 WL 7709583 (S.D. Tex. June 25, 2015), in which the U.S. District Court for the Southern District of Texas held that an employer's rotational pay policy violated the FLSA. *See id*. at *4.

But the facts of *Sandel* are quite different from those of the instant case.  The *Sandel* plaintiffs were rotational field employees who were paid only for their time spent working on rotation.  *Id*. at *3.  The employer never compensated the plaintiffs for off-rotation hours. *Id*.  But because the plaintiffs' employer decided that its employees "were not handling their money well," the employer divided the plaintiffs' on-rotation earnings in half and began paying the plaintiffs half of their earnings during on-rotation time and the other half during off-rotation time.  *Id*.  The *Sandel* court held that "changing the timing of the payments [did]

z
z

not change their legal significance" and that the employer's payments for "off" days were thus includable in the regular rate as a matter of law. *Id*. at 4.

Here, in contrast, Bayou never divided Plaintiffs' on-rotation pay in half and spread it among pay periods. Instead, Bayou fully compensated Plaintiffs for their on-rotation work – including overtime – and then paid Plaintiffs *additional* income for off-rotation weeks so that they would spend the time recuperating and not seek other work. Agee's testimony in direct response to a question about why Bayou adopted its rotational pay policy confirms this:

> Q. How did you come up with the idea of covering the forty hours? What was the – if you recall the discussions of how that came about.
>
> . . . .
>
> A. Well, the – we were being asked to be – we were being asked to be as good as we possibly could be while we were at work. One of the – one of the sort of fundamental metrics that we used both internally and externally with our customer was to measure our ready-to-pump time.
>
> Q. Okay.
>
> A. Along with another, which was safety, and our ability to control, you know, spills on location or an environmental component.
>
> Q. Sure.
>
> A. And so fundamental to that was – and what was – that was the expectation. The way for us to best deliver on that expectation and that – and part of our agreement and our contract was to make sure that we had a very well-rested group of people that were being paid to rest while they were off, to then show back up to work to go ahead and work, not just 40-hour weeks, I mean, a heck of a lot more . . . . I've done that before, and you can do that for a period of time, but the longer you do it without being able to recharge and refresh, the more taxing the system is. And a frac location is an incredibly dynamic place with thousands of moving parts with thousands of areas that are high risk. And

> so just as we engineered the equipment and the location to go ahead and try and mitigate risk, one of the things that we wanted to do was to further mitigate employee exposure to risk by going ahead and making sure that their time off was truly time off. So we chose to pay them to not work and to sleep, essentially.

Def.'s App. 146–48 [81]. Bayou also points to testimony from Plaintiff Raul Hazelhurst indicating that he understood that Bayou paid him during off-rotation weeks so he would recuperate and not work for another employer, *id*. at 98, and testimony from Plaintiff Kaleb Baugh indicating that being paid during off-rotation weeks made it easier for him to not look for other work, *id*. at 75–76. Thus, even if Bayou's policy of issuing paychecks every two weeks somehow trained Plaintiffs not to spend all of their money before their next paycheck, Bayou did not simply divide Plaintiffs' on-rotation pay in half and then spread the pay between on- and off-rotation weeks. Instead, Bayou paid Plaintiffs in full for their on-rotation hours worked and then paid Plaintiffs *additional* wages to recuperate and refrain from accepting other work during off-rotation weeks.

Bayou was within its rights to compensate Plaintiffs for recovering from strenuous on-rotation weeks instead of accepting employment elsewhere. "[A]n employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Armour & Co. v. Wantock*, 323 U.S. 126, 133–34 (1944) (holding that, where firefighters were required to remain on call in fire hall, time spent in amusements or idleness qualified as working time for FLSA purposes); *see also Alvarez v. IBP Inc.*, 546 U.S. 21, 26 (2005) (stating that in *Armour* the Court "clarified that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA." (citing *Armour*, 323 U.S. 126)).

Bayou acted legally when it compensated Plaintiffs for time spent recuperating and refraining from other employment. That Bayou's policy may have had an income-smoothing effect is itself insufficient to create a genuine dispute of material fact precluding summary judgment. The Court thus grants Bayou's motion for summary judgment and denies Plaintiffs' motion for summary judgment with respect to Plaintiffs' claim that Bayou's rotational pay policy violates the FLSA.

### IV. GENUINE DISPUTES OF MATERIAL FACT EXIST REGARDING WHETHER THE TIP 3 BONUSES COMPLIED WITH THE FLSA

Bayou and Plaintiffs each move for summary judgment regarding whether Bayou's calculation of TIP 3 bonuses and the increase in the regular rate of pay associated with the bonuses complied with the FLSA. The Court grants in part and denies in part Bayou's motion and denies Plaintiffs' motion.

The TIP 3 bonuses were quarterly incentive payments based on certain safety and performance metrics. Bayou created TIP 3, the third amended TIP plan, in November 2013. The TIP 3 plan document stated that "[i]f a bonus is paid, an additional payment for overtime attributable to the bonus will also be paid." Def.'s App. 174 [81]. Under TIP 3, eligible employees received a specific bonus payment and separate overtime payment, resulting in the same total incentive payment for all crew members. Bayou asserts that it used TIP 3 to incentivize team, rather than individual, performance, so it tried to treat members of each crew equally with respect to TIP 3 bonus payments. Plaintiffs now challenge Bayou's calculation of TIP 3 bonuses and the increase in the regular rate of pay associated with the bonuses.

### A. Bayou's Consideration of Its Total Bonus and Overtime Liability When Calculating TIP 3 Bonuses Complied with the FLSA

Plaintiffs argue that, rather than set a TIP 3 bonus amount and then pay additional overtime based on that bonus amount, Bayou set the total amount it wanted to pay and then artificially divided that number into bonus and overtime on the bonus to create the appearance of FLSA compliance. Plaintiffs assert that because Bayou did not change TIP 3 bonus amounts based on overtime hours worked, under TIP 3 Plaintiffs' regular rates declined inversely with the amount of overtime hours worked.

But Plaintiffs identify no provision of the FLSA that prohibits Bayou from paying different bonus and overtime amounts to Plaintiffs or from considering the total bonus amount – including overtime – when deciding the level of TIP bonus to award to Plaintiffs. Plaintiffs quote *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 437 (1945), for the proposition that courts "cannot arbitrarily divide bonuses or piece work wages into regular and overtime segments, thereby creating an artificial compliance with" the FLSA. But *Harnischfeger* is distinguishable. In *Harnischfeger*, employees received contracted-for piecework wages styled as incentive bonuses in addition to their base hourly rates. *Id*. at 428–29. The Supreme Court rejected the employer's attempt to include only the employees' base rate in the regular pay rate for purposes of calculating overtime, holding that the employer must include both the base rate and the incentive bonuses in Plaintiffs' regular rate of pay. *Id*. at 430–32.

Here, Plaintiffs do not dispute that Bayou did in fact pay overtime associated with TIP 3 bonuses. Instead, they challenge the means by which Bayou decided how much of a bonus

to pay, but provide no authority suggesting those means are prohibited by the FLSA. Courts may not imply a prohibition that cannot be found in the FLSA. *See Christensen v. Harris Cty.*, 529 U.S. 576, 585 (2000). The Court thus grants Bayou's motion for summary judgment and denies Plaintiffs' motion for summary judgment on Plaintiffs' claim that Bayou's consideration of its total bonus and overtime liability when calculating TIP 3 bonuses violated the FLSA.

### B. Bayou is Not Entitled to Summary Judgment Regarding Whether Its Method of Calculating the Regular Rate Increase Attributable to TIP 3 Bonuses Complied with the FLSA

Bayou moves for summary judgment on Plaintiffs' claim that Bayou incorrectly used off-rotation hours to calculate the increase in the regular rate of pay attributable to the TIP 3 bonuses. The Court denies Bayou's motion.

"The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. "Where a bonus payment is considered a part of the regular rate at which an employee is employed, it must be included in computing his regular hourly rate of pay and overtime compensation." *Id*. § 778.209 (a). "When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned." *Id*. But "[i]f it is impossible to allocate the bonus among the workweeks of the period in proportion to the amount of the bonus actually earned

each week, some other reasonable and equitable method of allocation must be adopted." *Id.* § 778.209(b).

Plaintiffs challenge Bayou's practice of allocating the TIP 3 bonuses across both on- and off-rotation hours when calculating the regular rate increase due to the TIP 3 bonuses. Plaintiffs argue that they earned the TIP 3 bonuses only during on-rotation weeks such that Bayou should use only on-rotation hours in calculating the regular rate. Bayou responds that allocating TIP 3 bonuses among workweeks in proportion to the amount of the bonus earned each week is impossible, so it may use the "reasonable and equitable" alternative method of allocating the TIP 3 bonuses across all on- and off- rotation hours. *See id.*

But regardless of whether Bayou's allocation method was reasonable and equitable, Bayou has made no showing that it was in fact impossible to allocate the TIP 3 bonuses over on- and off-rotation workweeks. And under the applicable regulations, allocating a bonus in proportion to the amount of the bonus actually earned each week must in fact be impossible for an employer to adopt an alternative allocation method. *See id.* § 778.209. The Court thus denies Bayou's motion for summary judgment.

### V. PLAINTIFFS HAVE NOT SHOWN THAT A GENUINE DISPUTE OF MATERIAL FACT EXISTS WITH RESPECT TO THEIR TRAVEL TIME CLAIMS

Bayou moves for summary judgment with respect to Plaintiffs' claim that Bayou "failed to pay Plaintiffs . . . one-and-one-half times their 'travel' pay rate for all travel hours worked in excess of 40 hours per week." Pls.' Second Am. Compl. ¶ 22 [22]. Bayou points to voluminous evidence in the record indicating that it did indeed properly compensate

Plaintiffs for travel time. Plaintiffs have not responded to Bayou's arguments. The Court thus grants Bayou's summary judgment motion with respect to Plaintiffs' travel time claims.

### VI. SIX PLAINTIFFS' CLAIMS ARE TIME-BARRED

The standard two-year FLSA limitations period is extended to three years if the employer's violation is "willful." 29 U.S.C. § 255(a). Bayou argues that even if the three-year statute of limitations applies, Plaintiffs Edgar Hernandez, Gregory Bell, Joseph Lemoine, and Edgar Summers terminated their employment and Plaintiffs Anulfo Caballero and Robert Bassler moved into exempt positions that are not the subject of this litigation more than three years before they opted in to this action. *See* Def.'s Mot. for Sum. J. 32 [79]. Plaintiffs have not responded to Bayou's argument. The Court thus grants Bayou's motion for summary judgment that the six Plaintiffs' claims are time-barred.

### VII. GENUINE DISPUTES OF MATERIAL FACT EXIST REGARDING WHETHER BAYOU PROPERLY EXCLUDED CERTAIN BONUSES FROM THE REGULAR RATE AND WHETHER BAYOU WILLFULLY VIOLATED THE FLSA

Plaintiffs move for summary judgment on their claims that (1) Bayou improperly excluded TIP bonuses from the regular rate and (2) Bayou willfully violated the FLSA. The Court denies Plaintiffs' motion.

#### A. Genuine Fact Issues Exist Regarding Whether Bayou Properly Excluded Pre-TIP 3 Bonuses from the Regular Rate

Plaintiffs assert that the bonuses Bayou paid under each version of the TIP were nondiscretionary bonuses that Bayou was required to include in the regular rate of pay for overtime purposes. The FLSA provides that the regular rate does not include:

> Sums paid in recognition of services performed during a given period if . . . both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly.

29 U.S.C. § 207(e)(3). The Department of Labor has expounded in interpretive regulations on what qualifies as a discretionary bonus under section 207(e)(3):

> (b) Discretionary character of excluded bonus. In order for a bonus to qualify for exclusion as a discretionary bonus under section [207(e)(3)(a)] the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right, express or implied, to any amount.

29 C.F.R. § 778.211(b). In contrast, the Department of Labor's interpretive regulations state that promised bonuses are not excludable from the regular rate:

> (c) Promised bonuses not excluded. The bonus, to be excluded under section [207(e)(3)(a)], must not be paid "pursuant to any prior contract, agreement, or promise." For example, any bonus which is promised to employees upon hiring . . . would not be excluded from the regular rate under this provision of the Act. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay.

*Id.* § 778.211(c) (quoting 29 U.S.C. § 207(e)(3)).

As an initial matter, the Court rejects Plaintiffs' assertion that Bayou failed to include TIP 3 bonuses in the regular rate on the grounds that such bonuses were discretionary. Bayou states – and Plaintiffs do not meaningfully dispute – that Bayou "began including

bonus payments in the regular rate upon implementation of [TIP 3] in November 2013." Br. in Supp. of Def.'s Resp. to Pl.'s Mot. for Sum. J. 32 n.32 [94].

Nor have Plaintiffs demonstrated beyond genuine dispute that Bayou improperly excluded pre-TIP 3 bonuses from the regular rate. Bayou concedes that it designed TIP to incentivize team performance and that payment of TIP bonuses was contingent on continued employment. Plaintiffs thus argue that the bonuses were nondiscretionary. *See* 29 C.F.R. § 778.211(c) (stating that "bonuses for quality and accuracy of work" and "bonuses contingent upon the employee's continuing in employment until the time the payment is to be made" are "in th[e] category" of nondiscretionary bonuses). But the fact that the TIP bonuses were incentive bonuses contingent on continued employment is not alone sufficient. Read in context, the interpretive regulations make clear that only bonuses paid "pursuant to [a] prior contract, agreement, or promise" are in fact nondiscretionary. *Id.* (quoting 29 U.S.C. § 207(e)(3)).

Plaintiffs have *not* shown that no genuine dispute exists regarding whether Bayou promised or announced the bonuses to Plaintiffs such that Bayou relinquished its discretion with respect to either the fact or the amount of payment. *See* 29 C.F.R. § 778.211(b) (stating that, for a bonus to be excluded as discretionary, "the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid"). Plaintiffs point to Agee's testimony indicating that he cannot recall a circumstance after July 15, 2012, in which any employee who satisfied the TIP requirements did not receive a TIP bonus. Pls.' App. in Supp. of Mot. for Sum. J. ("Pls.'

App.") 32 [89]. But while Bayou's practices may in fact demonstrate that it consistently awarded TIP bonuses, Plaintiffs have not demonstrated beyond genuine dispute that the bonuses were nondiscretionary. Plaintiffs' offer letters stated only that they would be eligible to participate in the TIP – not that any TIP bonus amount was promised. And while Plaintiffs point to TIP documents setting forth bonus amounts that Bayou planned to pay if Plaintiffs achieved certain performance and safety milestones, Plaintiffs have not demonstrated that they actually saw the TIP documents or discussed the TIP with Bayou management. Indeed, Plaintiff Carlos Castillo has admitted that he understood that the TIP bonus was not guaranteed. Def.'s App. 114–15 [81]. And Plaintiff Frankie Fulton indicated that he could not recall if the TIP bonus was guaranteed. *Id*. 33.

Viewing the facts in the light most favorable to Bayou, the Court holds that a reasonable jury could conclude that Plaintiffs had "no contract right, express or implied, to any amount" of TIP bonus. *See* 29 C.F.R. § 778.211(b). Plaintiffs have thus not shown that no genuine dispute exists regarding whether the TIP bonuses were nondiscretionary bonuses that Bayou impermissibly excluded from the regular rate. The Court denies Plaintiffs' motion for summary judgment with respect to their claim that Bayou improperly excluded TIP bonuses from the regular rate.

### *B. Plaintiffs Have Not Demonstrated That No Genuine Dispute Exists Regarding Whether Bayou Willfully Violated the FLSA*

Plaintiffs also argue that Bayou willfully violated the FLSA by instituting TIP 3. But as set forth in Section IV(a) *supra*, Bayou's institution of TIP 3 and attendant consideration of its total bonus and overtime liability when calculating TIP 3 bonuses complied with the

FLSA. Nor have Plaintiffs shown beyond genuine dispute that Plaintiffs otherwise violated the FLSA. The Court thus denies Plaintiffs' motion for summary judgment on its claim that Bayou willfully violated the FLSA.

### CONCLUSION

The Court grants and denies the motions as follows:

- The Court GRANTS Bayou's motion for summary judgment with respect to its rotational pay plan's compliance with the FLSA [79];

- The Court GRANTS Bayou's motion for summary judgment with respect to whether its consideration of both its total bonus an overtime liability when calculating TIP 3 bonuses complied with the FLSA [79];

- The Court DENIES Bayou's motion for summary judgment with respect to whether its method of calculating regular rate increases attributable to TIP 3 bonuses complied with the FLSA [79];

- The Court GRANTS Bayou's motion for summary judgment with respect to Plaintiffs' travel time claims [79];

- The Court GRANTS Bayou's motion for summary judgment that the six Plaintiffs' claims are time-barred [79];

- The Court DENIES Plaintiffs' motion for summary judgment [88].


-

Signed September 11, 2018.

_____
David C. Godbey
United States District Judge